UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **ANTONIO LASHUN NOLAN** | **CIVIL ACTION NO. 25-1144** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **OFFICER BUCHANAN, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Antonio Lashun Nolan, who proceeds pro se and in forma pauperis, filed this proceeding on approximately August 8, 2025, under 42 U.S.C. § 1983. He names the following Defendants: Officer Buchanan, Officer Zane Crittenden, Officer Luke Price, the Minden Police Department, and City Attorney Jimbo Yocom.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff states that on May 6, 2025, the Minden Police Department "dispatch reported a 'suspicious person in a black hoodie,' naming no specific crime and providing a vague description." [doc. # 9, p. 7]. Plaintiff, "a black man with a documented mental health disability," "was walking home from a local store with groceries," and not engaging in any unlawful activity. *Id.* He walked on the right side of the street "in compliance with pedestrian safety laws." *Id.* He claims that Officers Buchanan, Crittenden, and Price unlawfully detained him on the street and informed him that he violated LA. REV. STAT. 32:216(B), which is entitled, "Pedestrians on highways or interstate highways." *Id.* Plaintiff maintains that he did not violate

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

the statute and that the Defendants lacked reasonable suspicion for the stop. *Id.* He also states that, because of the unlawful stop, all "subsequent evidence" is fruit "of the poisonous tree." [doc. # 15, p. 4].

Plaintiff claims that during the stop, Officer Crittenden verbally insulted him, repeatedly calling him "Ball or Baal." [doc. #s 9, p. 7; 15, p. 2].

When an officer asked for Plaintiff's identification, Plaintiff declined and "invoked his right to silence." [doc. # 9, p. 7]. He claims that Officer Crittenden then arrested him without probable cause for "pedestrian on highway" and "resisting."[2]  [doc. #s 9, p. 7; 15, p. 2].

Plaintiff suggestively claims that Officer Crittenden utilized excessive force by aggressively handcuffing him. [doc. # 15, p. 2]. He claims that Officer Buchanan failed to intervene and stop "Crittenden's excessive handcuffing and verbal harassment." *Id.* at 3.

Plaintiff claims that Officer Price "[f]ailed to intervene to prevent constitutional violations." [doc. # 15, p. 3].

Plaintiff claims that Officers Crittenden and Buchanan engaged in an unlawful search "without probable cause or consent." [doc. # 15, p. 3].

Plaintiff gave the officers his name, and officers then discovered his prior 2015 "false arrest" for burglary and resisting an officer. [doc. # 9, p. 7]. He states that the 2015 arrest was "unsupported by evidence of physical proof." *Id.* He asks the Court to order Defendants to "correct the false 2015 arrest record created against" him. *Id.* at 8.

Plaintiff's 2025 "pedestrian on highway" charge was eventually dismissed, but he was convicted of the 2025 charge of resisting. [doc. # 9, p. 7]. He maintains that he is innocent. His

---

[2] Plaintiff voluntarily dismissed his former claim that he was not read his *Miranda* rights. [doc. # 15, p. 4].

conviction has "not been reversed, expunged, invalidated, or challenged in federal court through habeas corpus." [doc. # 15, p. 6].

Plaintiff claims that Defendants denied him exculpatory body camera footage. [doc. # 9, pp. 4, 7].

Plaintiff claims that City Attorney Jimbo Yocom prosecuted him and (1) violated Plaintiff's right to a speedy trial by delaying trial from July 23, 2025, to August 20, 2025, after Plaintiff filed motions to suppress and sought legal representation; (2) coordinated "with defense counsel who then withdrew representation after reviewing Plaintiff's suppression motions and evidence, causing Plaintiff to proceed pro se without replacement counsel on the final trial date"; (3) engaged in ex parte communications with the presiding judge; (4) examined Plaintiff at trial about Plaintiff's "willingness to plead guilty and his mental and physical disabilities, leveraging this knowledge to exert improper pressure and exploit Plaintiff's vulnerabilities in violation of the Americans with Disabilities Act"; (5) interrupted Plaintiff's trial presentation; (6) operated under a conflict of interest, serving as the City Attorney and prosecutor; (7) conspired with Minden Police Officers and others to deprive Plaintiff of his constitutional rights; (8) used his authority to intimidate and interfere with Plaintiff's defense; (9) prosecuted false charges; (10) treated Plaintiff "disparately and unfairly compared to others with counsel, violating the Equal Protection Clause"; and (11) denied Plaintiff due process by "obstructing counsel, limiting defense, and prejudicing the trial." [doc. #s 15, pp. 6-7; 19, p. 1]. Plaintiff maintains that Yocom's actions constituted a "coordinated effort to frustrate Plaintiff's fair trial rights and obstruct justice." [doc. # 15, p. 7].

Plaintiff seeks compensation, punitive damages, and the correction of his 2015 record. [doc. # 9, p. 8].

## Law and Analysis

**1. Preliminary Screening**

Because Plaintiff is proceeding in forma pauperis, his Complaint is subject to screening under 28 U.S.C. § 1915(e)(2). Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Minden Police Department**

Plaintiff names the Minden Police Department as a Defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership." LA. CIV. CODE art. 24.

The Minden Police Department does not qualify as a juridical person. *See Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued . . . ."); *Aucoin v. Terrebonne Par. Sheriff's Off.*, 2022 WL 16657429, at *1 (5th Cir. Nov. 3, 2022). Accordingly, the Court should dismiss Plaintiff's claims against this entity.

**3. Verbal Insults**

Plaintiff claims that during the stop, Officer Crittenden verbally insulted him, repeatedly calling him "Ball or Baal." [doc. #s 9, p. 7; 15, p. 2].

Verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Allegations of mere verbal abuse simply do not give rise to a cause of action under Section 1983.[3] *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *Siglar*, 112 F.3d at 191.

---

[3] *See Gressett v. New Orleans City*, 779 F. App'x 260, 261 (5th Cir. 2019) (concluding, where the plaintiff alleged that an officer stood in his way, insulted him while holstering his taser and revolver, threatened him, and intimidated him, that though the officer's actions "may be unprofessional" and amounted to an "excess of zeal," they "did not violate [the plaintiff's] Fourteenth Amendment rights" and did not "constitute an abuse of power that 'shocks the conscience.'").

Because Plaintiff does not state a claim of constitutional dimension, the Court should dismiss this claim.

### 4. *Heck v. Humphrey*

Plaintiff claims that the three officer-defendants stopped him without reasonable suspicion. He also claims that Officer Crittenden falsely arrested him for "pedestrian on highway" and "resisting." He claims further that Defendants denied him exculpatory body camera footage. [doc. # 9, pp. 4, 5, 7].

Plaintiff's 2025 "pedestrian on highway" charge was eventually dismissed, but he was convicted of the 2025 charge of resisting. [doc. # 9, p. 7]. He maintains that he is innocent. His conviction has "not been reversed, expunged, invalidated, or challenged in federal court through habeas corpus." [doc. # 15, p. 6].

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a successful civil rights action that would necessarily imply the invalidity of a plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.

Here, prevailing on the false arrest claim would necessarily imply the invalidity of Plaintiff's conviction for resisting. "'[F]alse arrest . . . claims challenge the existence of probable cause and, thus, by their essence are collateral attacks on a criminal judgment's validity.'" *Thomas v. Pohlmann*, 681 F. App'x 401, 406 (5th Cir. 2017) (quoting *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed. App'x. 578, 583 (5th Cir. 2012)). When a plaintiff is convicted of a charge for which he was arrested, allowing him to proceed on his false arrest claim "would necessarily implicate the validity of [his] convictions because the same conduct that formed the probable cause for [his] arrest also provided the basis for [his] convictions." *Id.*

7

(citing *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("[The plaintiff's] proof to establish his false arrest claim, i.e., that there was no probable cause to arrest [for the crime for which he was ultimately convicted], would demonstrate the invalidity of [the conviction].")).[4]

That the State dismissed one charge arising from Plaintiff's arrest is of no consequence. Plaintiff plainly seeks relief for the allegedly unlawful *arrest* from which his conviction arose. "The specific crimes charged are irrelevant if the § 1983 claims would cause a civil judgment in the plaintiff's favor to 'collide' with the criminal judgment. It also is immaterial that the plaintiff was not convicted on every count charged." *Cormier*, 493 F. App'x at 583-85 (internal quotation marks and quoted sources omitted). "False-arrest and malicious-prosecution claims—as attacks on probable cause—focus on the validity of the arrest." *Id.* "Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest." *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001). Thus, "[i]f there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and *Heck* applies." *Wells*, 45 F.3d at 95.

Likewise, Plaintiff's unlawful stop claim, which is predicated on a lack of reasonable suspicion, is a collateral attack on the conviction because the conviction is founded on evidence

---

[4] *See also Connors v. Graves*, 538 F.3d 373, 377 (5th Cir. 2008) (reasoning that if the plaintiff "were to prevail on his unlawful seizure claim, he would necessarily undermine the validity of these convictions."); *Queen v. Purser*, 109 Fed. App'x. 659, * 1-2 (5th Cir. 2004) (former inmate's false arrest claim necessarily challenged whether evidence, which officer seized following an allegedly illegal stop, and which led to his subsequent conviction, supplied probable cause for his arrest; thus claim was not cognizable absent showing that the conviction had been invalidated); *Chande v. Moore*, 606 F. App'x 238, 239 (5th Cir. 2015) ("Because a showing that there was no probable cause for the challenged entry, search, seizure, and arrest would call into question the validity of [plaintiff's] resulting conviction for unlawful possession of a controlled substance with intent to deliver in a drug-free zone," the plaintiff's claims were barred by *Heck*); *Goldston v. City of Monroe ex rel. Monroe Police Dep't*, 621 F. App'x 274 (5th Cir. 2015).

derived from the officer's reasonable suspicion and subsequent stop. In fact, Plaintiff concedes that because of the unlawful stop, all "subsequent evidence" is fruit "of the poisonous tree." [doc. # 15, p. 4]. *See Jackson v. Vannoy*, 49 F.3d 175, 176 (5th Cir. 1995) (applying *Heck* to an unlawful vehicular stop clam); *Wallace v. Kato*, 549 U.S. 384, n.5 (2007) ("[A] Fourth Amendment claim can necessarily imply the invalidity of a conviction . . . .") *Agard v. Sanders*, 2006 WL 2128079, at *3 (N.D. Tex. July 31, 2006) (finding that the plaintiff's unlawful traffic stop claim would, if proved, implicate the validity of his guilty plea because the evidence discovered following the stop would be subject to suppression).

So too, prevailing on the claim that Defendants withheld exculpatory evidence would necessarily imply the invalidity of Plaintiff's conviction. *See Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994) ("[H]is complaint also alleges that Sheriff Coleman and Investigator Brinkley violated Boyd's rights by withholding exculpatory evidence obtained during the investigation of Bobby Rogers' murder. If proved, these claims would call Boyd's conviction into question under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny.").[5] By its very nature, exculpatory evidence tends "to establish a criminal defendant's innocence." *See* EVIDENCE, BLACK'S LAW DICTIONARY (12th ed. 2024).

Thus, Plaintiff may not seek damages for an unlawful stop, false arrest, and withholding exculpatory evidence until his conviction is reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. The Court should dismiss these claims.

---

[5] *See also Gonzalez v. Garza*, 59 F.3d 1241 (5th Cir. 1995) (holding that claims that evidence was manipulated or withheld to corroborate perjured testimony "would be foreclosed by *Heck*."); *Heath v. Thomas*, 34 F. App'x 962 (5th Cir. 2002) (finding a claim of withholding evidence barred by *Heck*.).

**5. Excessive Force**

Plaintiff suggestively claims that Officer Crittenden utilized excessive force by aggressively handcuffing him. [doc. # 15, p. 2].

"To establish a Fourth Amendment violation based on an officer's use of excessive force, the plaintiff must show: (1) an injury; (2) which resulted from the use of force that was clearly excessive to the need; (3) the excessiveness of which was objectively unreasonable." *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)). "Since an excessive force claim arises out of the Fourth Amendment, the test applied is whether the force was reasonable." *Frank v. Parnell*, 2023 WL 5814938, at *3 (5th Cir. Sept. 8, 2023) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "This reasonableness inquiry is an objective one: 'the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.*

"In making this determination, a court should consider the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 728-29 (5th Cir. 2018) (quoting *Graham*, 490 U.S. at 396). "Additionally, while not exclusive and outlined 'only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force,' the court can also consider 'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'" *Frank*, 2023 WL at

5814938 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

Here, Plaintiff does not allege that he suffered any injury when Crittenden handcuffed him. "Tight handcuffing alone, even where a detainee sustains minor injuries, does not present an excessive force claim." *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) (cited sources omitted). In *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001), for example, the plaintiff alleged that officers "handcuffed her so tightly that her right hand became swollen," and she complained to the officers that the handcuffs were too tight. The court determined that the handcuffing did not amount to excessive force because the plaintiff did not allege that the officer acted maliciously and "handcuffing too tightly, without more, does not amount to excessive force." *Id.* at 314.

In *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007), the plaintiff alleged that officers handcuffed her too tightly, "twisted her arms behind her back while handcuffing her[,] and jerked her all over the carport," leaving bruises on her hands and arms that required medical treatment. The Fifth Circuit concluded that such allegations did not amount to excessive force because the injuries were minor and incidental to the use of handcuffs during arrest. *Id.* at 416-17. In *Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005), the Fifth Circuit held that a plaintiff who alleged that "he suffered acute contusions of the wrist" from handcuffing did not state an excessive force claim because he alleged no more than *de minimis* injury from the handcuffing and did not allege that the officers had any malice in handcuffing him.[6]

Here, Plaintiff does not allege greater-than-de minimis injuries, and he essentially alleges tight handcuffing "alone." Accordingly, the Court should dismiss this claim.

---

[6] *See also Emesowum v. Cruz*, 756 F. App'x 374, 381 (5th Cir. 2018) ("To the extent that Emesowum makes the conclusory assertion that the officers used excessive force in handcuffing or verbally threatening him, these claims fail.").

**6. Failure to Intervene**

Plaintiff claims that Officer Buchanan failed to intervene and stop "Crittenden's excessive handcuffing and verbal harassment." However, as above, Plaintiff does not raise a plausible excessive force or verbal harassment claim. Thus, there was no excessive force or verbal harassment from which Buchanan failed to protect Plaintiff. *See Ballard v. Hedwig Vill. Police Dep't*, 408 F. App'x 844, 845 (5th Cir. 2011) (finding that because the plaintiff's excessive force claim failed against one defendant, that the plaintiff "failed to establish a use of excessive force from which the other officers could or should have protected him"); *Griffin v. City of Sugarland, Texas*, 787 F. App'x 244, 245 (5th Cir. 2019) ("Because his excessive force claim fails because there was no violation of his constitutional rights, Griffin's bystander liability theory also fails.").

Plaintiff also claims that Officer Price "[f]ailed to intervene to prevent constitutional violations." [doc. # 15, p. 3]. However, Plaintiff does not identify any specific constitutional violation Officer Price failed to prevent. The Court should dismiss this all-too-conclusory claim. *See Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (holding, where the plaintiffs alleged that defendants knew a fellow officer was violating their rights and had an opportunity to prevent the harm but chose not to act, that the plaintiffs did not state a plausible claim because a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks and quoted source omitted).

**7. Unlawful Search**

Plaintiff claims that Officers Crittenden and Buchanan engaged in an unlawful search "without probable cause or consent" before arresting him. [doc. #s 15, p. 3; 9, p. 5]. Plaintiff's claim, however, is impermissibly conclusory, amounting to no more than a legal conclusion or "a

formulaic recitation of the elements of a cause of action" which does not satisfy Rule 8. Distilled, he states only (i) that officers conducted a search and (ii) that officers lacked probable cause and consent. He does not, for example, specify where the officers searched, what they searched, whether both officers searched, whether the officers only conducted a weapons frisk, or the extent or duration of the search.[7] The Court should dismiss this claim.[8]

### 8. Plaintiff's 2015 Arrest

After Plaintiff gave the officers his name, they discovered his prior 2015 "false arrest" for burglary and resisting an officer. [doc. # 9, p. 7]. He states that the 2015 arrest was "unsupported by evidence of physical proof." *Id.* He asks the Court to order Defendants to "correct the false 2015 arrest record created against" him. *Id.* at 8.

---

[7] To the extent the officers conducted a weapons frisk or pat down, and to the extent Plaintiff claims that the frisk was unlawful because the officers lacked reasonable suspicion to detain him, his claim would be barred under the *Heck* doctrine. To properly effectuate a weapons frisk, the officer must have reasonable suspicion that criminal activity is afoot and reasonable, individualized suspicion that the suspect is armed and dangerous. *See United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020) (citing *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014)); *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (*en banc*) (discussing *Terry*, 392 U.S. 1; *Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990)).

[8] *See Toney v. Shopmeyer*, 146 F.3d 867 (5th Cir. 1998) (opining that an allegation that defendants conducted an "illegal search" was conclusional and insufficient); *Magda Hagan of the Fam. v. Rosales*, 2023 WL 4417302, at *3 (W.D. Tex. May 25, 2023), report and recommendation adopted, 2023 WL 3973625 (W.D. Tex. June 13, 2023) (reasoning, where the plaintiff alleged only that officers conducted an unlawful search in violation of the Fourth Amendment, that the allegation was not enough to raise a right to relief above the speculative level and that the plaintiff failed "to describe the alleged search or any of the events with sufficient detail for the Court to discern what happened."); *Davis v. Cedar Hill Police Dep't*, 2018 WL 1633023, at *6 (N.D. Tex. Mar. 9, 2018), *report and recommendation adopted,* 2018 WL 1617858 (N.D. Tex. Apr. 4, 2018) ("[T]he Court need not credit conclusory allegations and legal conclusions made elsewhere that neither reasonable suspicion nor probable cause (nor even warrants) supported the defendants' actions.").

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). "A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Here, Plaintiff does not appear to raise any claim concerning his 2015 charges; rather, he seems to only seek relief—the correction of his record—unmoored from any claim. At best, construing the allegations liberally, he suggests that he was falsely arrested in 2015. However, he does not allege that any Defendant in this proceeding arrested him in 2015 or that any Defendant was otherwise personally involved in, or responsible for, the alleged false arrest. Accordingly, the Court should dismiss this claim.

### 9. City Attorney Jimbo Yocom

Plaintiff claims that City Attorney Jimbo Yocom prosecuted him and (1) violated Plaintiff's right to a speedy trial by delaying trial from July 23, 2025, to August 20, 2025, after Plaintiff filed motions to suppress and sought legal representation; (2) coordinated "with defense counsel who then withdrew representation after reviewing Plaintiff's suppression motions and evidence, causing Plaintiff to proceed pro se without replacement counsel on the final trial date"; (3) engaged in ex parte communications with the presiding judge; (4) examined Plaintiff at trial about Plaintiff's "willingness to plead guilty and his mental and physical disabilities, leveraging

14

this knowledge to exert improper pressure and exploit Plaintiff's vulnerabilities in violation of the Americans with Disabilities Act"; (5) interrupted Plaintiff's trial presentation; (6) operated under a conflict of interest, serving as the City Attorney and prosecutor; (7) conspired with Minden Police Officers and others to deprive Plaintiff of his constitutional rights; (8) used his authority to intimidate and interfere with Plaintiff's defense; (9) prosecuted false charges; (10) treated Plaintiff "disparately and unfairly compared to others with counsel, violating the Equal Protection Clause"; and (11) denied Plaintiff due process by "obstructing counsel, limiting defense, and prejudicing the trial." [doc. #s 15, pp. 6-7; 19, p. 1]. Plaintiff maintains that Yocom's actions constituted a "coordinated effort to frustrate Plaintiff's fair trial rights and obstruct justice." [doc. # 15, p. 7].

In an amended pleading, Plaintiff clarifies that he does not seek damages against City Attorney Jimbo Yocom. Rather, he lists Yocom's alleged actions only "as a formal notice for context, record preservation, and to support the factual history of the case, not as a basis for civil damages."

Plaintiff does, however, appear to still seek "injunctive relief" against Yocom. [doc. # 15, p. 7]. But the only specific injunctive relief Plaintiff seeks is the correction of his 2015 arrest record, and this requested relief is wholly unrelated to his claims against Yocom. [doc. # 9, p. 8]. Apart from that, Plaintiff does not specify the injunctive relief he seeks against Yocom. Consequently, he fails to seek any cognizable relief for these claims. The Court should, therefore, dismiss the claims for failure to state claims on which relief may be granted. *See generally Collins v. King*, 743 F.2d 248, 250 (5th Cir. 1984) (affirming the dismissal of a claim where the plaintiff did not "seek any relief on the basis of that incident" of which he complained and where the relief the plaintiff did seek was not appropriate redress).

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Antonio Lashun Nolan's claims of unlawful stop, false arrest, and withholding exculpatory evidence be **DISMISSED WITH PREJUDICE** as legally frivolous and for failure to state claims on which relief may be granted, until the *Heck* conditions are met.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 6th day of October, 2025.

_____
Kayla Dye McClusky
United States Magistrate Judge